UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>v.<br><br>MARKALOWE STEEN,<br><br>   Defendant. | Case No. 21-20012<br><br>Honorable Laurie J. Michelson |

**OPINION AND ORDER DENYING MOTION TO SUPPRESS [24]**

Local law enforcement officers approached Markalowe Steen near a Detroit-area liquor store after observing a handgun tucked in his waistband. Steen took off running. During the ensuing chase, Steen had the firearm in his hand. Steen was ultimately apprehended and arrested for carrying a concealed weapon. Officers found another firearm in Steen's fanny pack. Eventually, Steen was charged in this court with being a felon in possession of a firearm. He now seeks to suppress the firearms and ammunition that were recovered during this incident. (ECF No. 24.) Steen contends that the officers had neither reasonable suspicion to stop nor probable cause to arrest him, especially where it is lawful in Michigan to carry a firearm. The government opposes the motion (ECF No. 28), and the Court held an evidentiary hearing on October 12 and 21, 2021.

Because the police had probable cause to arrest Steen, the motion will be DENIED.

## I.

The testimony of the officers at the evidentiary hearing was consistent with their police reports (ECF No. 24-1) and body camera footage (Hrg. Exs. A and B). It supports the following narrative.

During the early evening of August 15, 2020, three Detroit police officers were on proactive patrol in a marked squad car. (ECF No. 24-1, PageID.71.) Proactive patrol means they were looking for unlawful activity. Officer Ian McBee was driving the squad car, Officer Michael Scott was the front passenger, and Officer Malik Alyacoub was the rear passenger. At approximately 6:55 pm, while it was still light out, the officers were driving through the parking lot of the Grand Cru liquor store on Warren road in Detroit. (ECF No. 24-1, PageID.72.) This is a location known for drug trafficking and illegal gun possession. (ECF No. 28-3, PageID.112.)

McBee and Scott observed an individual, later identified as Steen, on the sidewalk near the south end of the parking lot with a handgun tucked into the right side of his waistband. (ECF No. 24-1, PageID.68, 72; Hrg. Ex. B, Scott Video 1:22-1:32 and 2:07-2:09 (Scott tells other officers that Steen was outside the liquor store with the gun tucked in his waistband).) McBee testified that he saw the handle of a gun protruding in the waistband. (*See also* Hrg. Ex. A, 3:19-3:25 (McBee tells other officers "we see it in his waist.").) Steen looked in the direction of the police car, turned his body away from the officers, and walked behind a parked car. (ECF No. 24-1, PageID.68, 72.) McBee exited the car in an attempt to make contact with Steen and begin a concealed weapon investigation. (*Id.*) But Steen took off running across

2

Warren road. (*Id.*) Officer Alyacoub pursued Steen on foot while Scott and McBee gave chase in the squad car. (ECF No. 24-1, PageID.68, 71, 72; Hrg. Ex. B.) Steen ran through a field and then to an alley behind a building on Warren. When Steen emerged from the alley, he was holding a black handgun. (*Id.* at PageID.68, 72.) McBee and Scott had traveled to that area and testified that the gun was pointed in their direction. McBee and Scott exited the patrol car. McBee ordered Steen to drop the weapon and get on the ground. (*Id.* at PageID.72.) Steen threw the handgun on the sidewalk and slid onto his stomach. (*Id.* at PageID.68, 72.) The officers then handcuffed and arrested Steen for carrying a concealed weapon. McBee said to Steen, "Are you serious dude? Do you know how dangerous that is, man? You got a pistol in your hand, we could have shot you." (Hrg. Ex. A, McBee 0:58-1:14.)

At the same time, Scott retrieved the discarded weapon, a loaded .40 caliber Smith and Wesson. (ECF No. 24-1, PageID.68.) McBee searched Steen and recovered an additional loaded Smith and Wesson handgun from a fanny pack Steen was wearing around his body. (*Id.* at PageID.68, 72.)

The officers then put Steen in the back of the patrol car to investigate whether he was eligible to carry a concealed weapon. Steen was not in possession of a Michigan concealed pistol license and the officers say their check in the Law Enforcement Investigation Network (LEIN) revealed that Steen did not have a valid concealed pistol license. (ECF No. 24-1, PageID.73; ECF No. 28-3, PageID.112.) (Steen questions the officers' findings, but the Court need not resolve this issue.)

3

Ultimately, Steen, who has several prior felony convictions (ECF No. 1), was indicted by a federal grand jury on one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). (ECF No. 16.)

Steen now moves to suppress the firearms and ammunition that were seized by the Detroit police officers following his arrest. (ECF No. 24.) The essence of Steen's motion is that "[t]he officers effectuating this arrest thought . . . that Steen, as an unidentified Black man in Detroit, had a gun and ran from them. This is not enough for reasonable suspicion." (ECF No. 24, PageID.63.) And if it is not enough for reasonable suspicion, it is not enough for probable cause. (*Id.*) Thus, says Steen, the seizure of the firearms and ammunition violated his Fourth Amendment rights.

## II.

The Fourth Amendment protects against unreasonable searches and seizures and requires that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing . . . the persons or things to be seized." U.S. Const. amend. IV. "The Supreme Court has identified three types of reasonable, and thus permissible, warrantless encounters between the police and citizens: (1) consensual encounters in which contact is initiated by a police officer without any articulable reason whatsoever and the citizen is briefly asked questions; (2) a temporary involuntary detention or *Terry* stop which must be predicated upon 'reasonable suspicion;' and (3) arrests which must be based upon 'probable cause'" that the arrestee has committed or is committing a crime. *United States v. Pearce*, 531 F.3d 374, 380 (6th Cir. 2008) (citations omitted).

A.

The Court determines the existence of reasonable suspicion at the point of seizure. *United States v. McCauley*, 548 F.3d 440, 443 (6th Cir. 2008); *see also Robinson v. Howes*, 663 F.3d 819, 827 (6th Cir. 2011) ("We look first to the moment Petitioner was actually 'seized,' thereby implicating the Fourth Amendment, to determine if the seizure was justified by reasonable suspicion."). "[A] seizure does not occur simply because a police officer approaches an individual and asks a few questions." *Florida v. Bostick*, 501 U.S. 429, 434 (1991). Instead, "A person is seized when an officer 'by means of physical force or show of authority, has in some way restrained [his] liberty,' such that 'in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.' In addition, an individual must actually yield to the show of authority to be seized within the meaning of the Fourth Amendment." *United States v. Johnson*, 620 F.3d 685, 690 (6th Cir. 2010) (citations omitted). Thus, a suspect who flees from police is not "seized." *See California v. Hodari D.*, 499 U.S. 621, 626 (1991); *see also United States v. Russ*, 508 F. App'x 377, 382 (6th Cir. 2012) (agreeing with district court that defendant "was not seized because he fled"). "Determining when a person has submitted to police authority is an objective inquiry that takes into account all the facts and circumstances of the stop." *United States v. Johnson*, 631 F. App'x 299, 302 (6th Cir. 2015).

When the officers first observed Steen with the handgun in his waistband and when McBee exited the car to attempt a consensual encounter, Steen was not seized.

5

When Steen took off running, he was not seized. It was not until Steen finally complied with McBee's command to get on the ground and he was handcuffed that the seizure occurred. At that time, Steen had submitted to the officer's show of authority and it was clear that Steen was not free to walk away. *See United States v. McCauley*, 548 F.3d 440 (6th Cir. 2008); *see also United States v. Jones*, 673 F.3d 497, 501–02 (6th Cir. 2012) ("Here, because Defendant did not comply with [the officer's] commands to stop, he was not seized until [the officer] physically restrained him by taking him down and handcuffing him."). Steen appears to agree. (ECF No. 24, PageID.59 ("[I]t is clear Steen was 'seized' within the meaning of *Terry* when Officer McBee ordered him to the ground").)

In their briefs, the parties disputed whether this seizure was an investigative detention or an arrest. Following the evidentiary hearing, however, it is clear that the officers arrested Steen. McBee and Scott testified unequivocally that they placed Steen under arrest for carrying a concealed weapon. Thus, Steen's motion to suppress narrows to one issue: did the officers have probable cause to arrest him?

## B.

The familiar test asks "whether, at the moment the arrest was made, . . . the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [defendant] had committed or was committing an offense." *United States v. Harness*, 453 F.3d 752, 754 (6th Cir. 2006) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)).

6

*Carrying a concealed weapon.* Michigan law makes it unlawful to "carry a pistol concealed on or about [one's] person, or, whether concealed or otherwise, in a vehicle operated or occupied by the person . . . without a license to carry the pistol as provided by law." Mich. Comp. Laws § 750.227(2). A person must have the license with him "at all times he . . . is carrying a concealed pistol" and must "show" the license "upon request" by a police officer. Mich. Comp. Laws § 28.425f. When stopped by a police officer, the weapon holder "shall immediately disclose to the [police] officer" that he is carrying a pistol. *Id*.

McBee and Scott both testified that they observed Steen in a high crime location with a firearm protruding from his waistband. Steen turned his body away from the officers and stepped behind a park car. The officers believed that Steen was trying to shield the firearm. Instead of producing or informing the officers that he had a valid concealed pistol license, Steen fled before the officers could speak with him. At no point during the chase did Steen disclose that he had a concealed weapon or a license. Steen held the weapon in his hand and ultimately tossed it onto the sidewalk. Even after he was stopped, Steen still did not disclose that he had a concealed pistol license. McBee and Scott testified that in prior encounters, no suspect with a concealed pistol license has run away while some without a license have. In similar situations, courts have found probable cause. *See United States v. Lamb*, No. 16- 20077, 2016 U.S. Dist. LEXIS 105217, at *10–11 (E.D. Mich. July 6, 2016) ("Ample authority demonstrates that [Officer] Gardner had probable cause to arrest Lamb based upon his possession of the gun, and that Lamb carried the burden of producing

7

proof that he had a CPL license. Lamb did not carry that burden because he never produced a CPL license." (citations omitted)), *adopted by*, 2016 U.S. Dist. LEXIS 104609 (E.D. Mich. Aug. 9, 2016); *see also United States v. Seymour*, 739 F.3d 923, 928 (6th Cir. 2014) (probable cause existed to arrest defendant for carrying a concealed weapon where defendant, while attempting to run from police, reached for his waistband and the officer saw him holding a gun handle); *Conner v. Southfield Police Dep't*, 348 F. App'x 122, 124 (6th Cir. 2009) (rejecting plaintiff's claim for illegal arrest because probable cause supported the arrest where a gun was hidden in a car owned and occupied by plaintiff and she did not produce a license).[1] Thus, based on the totality of these circumstances, the officers had probable cause to believe that Steen was illegally carrying a concealed weapon.

Steen disagrees. Prior to the suppression hearing, Steen argued that "even if the officers are to be believed, all they saw was a Black man with a potential gun in his waistband who ran. They did not know who Steen was. They did not know anything about his criminal history. They were not looking for him as part of a broader investigation. They did not know if Steen was dangerous. These facts do not amount to . . . . probable cause." (ECF No. 24, PageID.59.)

But this is not a complete recitation of the totality of the circumstances. And the probable cause inquiry focuses on what the officers knew and not what they did

---

[1] The officers clearly had reasonable suspicion to believe Steen was carrying a concealed weapon. Once they learned that he had no license, they had probable cause to arrest him. But the government abandoned this argument at the suppression hearing based on the testimony of McBee and Scott that Steen was arrested and not simply detained pending further investigation of his license.

8

not know. And what they knew is that an individual in a high crime area was carrying a concealed weapon, the individual tried to prevent the officers from seeing the weapon, he fled rather than allow an inquiry into his concealed pistol license or criminal history status, and he never disclosed that he had a valid license. These facts and circumstances were sufficient to warrant a prudent person believing that Steen was unlawfully possessing a concealed weapon.

Following the suppression hearing, Steen asserted additional arguments. They fare no better.

First, Steen says the weapon was not concealed and Michigan allows open carry. McBee and Scott testified that they believed a firearm tucked into a waistband was concealed. Michigan law supports their belief. "'Concealment, under MCL 750.227(2), occurs when the pistol is not discernible by the ordinary observation of persons casually observing the person carrying it. Absolute invisibility of a weapon is not indispensable to concealment; the weapon need not be totally concealed.'" *People v. Toger*, No. 334330, 2018 Mich. App. LEXIS 293, at *5 (Mich. Ct. App. Feb. 20, 2018) (quoting *People v. Hernandez-Garcia*, 701 N.W.2d 191, 195 (Mich. Ct. App. 2005)). "Having the butt of a gun sticking out of a pocket, or inserting a gun into a belt or waistband so that it is partially obscured, is sufficient concealment to support a [carrying a concealed weapon] conviction." *People v. Mack*, No. 332079, 2017 Mich. App. LEXIS 1243, at *8 (Mich. Ct. App. Aug. 3, 2017) (citing cases).

Of course, the issue here is not the sufficiency of the evidence for a conviction, but for the establishment of probable cause. As the Michigan Court of Appeals

9

recently explained in finding reasonable suspicion to support an investigatory stop of the defendant:

> The officers were on patrol in an area of the community known for repeated criminal activity, and were paying special attention to activities occurring at gas stations. The police officers saw defendant at his vehicle, with the hood up. Defendant was leaning over his vehicle checking his oil. And the officers saw the handle of a gun sticking out from defendant's clothes. While the handgun was partially visible because of the positioning of defendant's body and the vantage point of the police officers, it cannot be said that defendant was "openly" carrying the weapon in full view for the public to see upon casual observation. A portion of the gun was in defendant's waistband and the portion that was not in his waistband was, at minimum, partially covered by his clothing.

*People v. Wheeler*, No. 353419, 2021 Mich. App. LEXIS 1638, at *8 (Mich. Ct. App. Mar. 11, 2021). Similarly here, Steen's gun, tucked into his waistband, was at least partially concealed.

Also, the fact that McBee and Scott were able to detect the firearm does not mean that the gun was in the open and not concealed. These were not ordinary citizens but officers trained to spot criminal activity. And these were not officers on ordinary patrol, but officers on proactive patrol, actively looking for criminal activity. *See Mack*, 2017 Mich. App. LEXIS 1243, at *8–9 ("the person who observed and immediately recognized that defendant was carrying a weapon was not a casual observer, but a police officer trained with respect to firearms. The officer was not 'casually observing' defendant, but was patrolling the streets for criminal activity and critically observing all persons he encountered."). So the concealed nature of Steen's firearm supports the probable cause determination.

Next, Steen also says the officers never asked him if he had a valid concealed pistol license. But that is because he fled before they had a chance—which enhanced the suspicion that his firearm possession was not lawful. Once the officers stopped Steen and were in a position to inquire, the burden of establishing possession of a license was on Steen. *See* Mich. Comp. Laws §§ 28.425(f)(3); 776.20.

In *United States v. Galaviz*, 645 F.3d 347 (6th Cir. 2011), the Sixth Circuit analyzed Michigan's concealed weapon provisions to determine "whether the incriminating nature" of a gun in a vehicle was immediately apparent for purposes of the plain-view exception. The Court explained that "[i]n Michigan, it is a crime to carry a pistol in a vehicle without a firearm license. . . . Therefore, the incriminating nature of a handgun in the vehicle was immediately apparent." *Id*. at 356 (citations omitted); *see also Williams*, 483 F. App'x at 27 ("As a result of [Michigan's] statutory structure, merely showing that a defendant carried a pistol in a vehicle he owns or operates establishes a prima facie violation of state law; at that point, it is up to the defendant to raise the issue of licensure and offer proof that his possession was lawful."); *United States v. Pope*, 910 F.3d 413, 416 (8th Cir. 2018) ("[C]arrying a concealed weapon in Iowa is presumptively criminal until the suspect comes forward with a permit, and we see no reason why the suspect's burden to produce a permit should be any different on the street than in the courtroom."). That same Michigan statute also makes it a crime to carry a concealed weapon on one's person without a license. So the incriminating nature of the handgun in Steen's waistband was immediately apparent. And by running, it was ultimately Steen's responsibility to

11

establish his license status once he was stopped. Thus, the incriminating nature of the firearm, Steen's efforts to position himself so the officers could not see it, and his decision to flee rather than provide the officers with a concealed pistol license gave the officers probable cause to believe Steen was unlawfully possessing the firearm whether they asked him about a license or not.

The case on which Steen relies in his briefing, *Northrup v. City of Toledo Police Department*, 785 F.3d 1128 (6th Cir. 2015), is distinguishable. The activity at issue in that case—openly carrying a firearm on one's person—is presumptively lawful in Ohio, while having a concealed weapon on one's person is not presumptively lawful in Michigan.

And the case on which Steen relied at the suppression hearing, *United States v. Watson*, No. 19-20296, 2019 U.S. Dist. LEXIS 134627 (E.D. Mich. Aug. 9, 2019), is also distinguishable. There, police officers approached Watson on a residential street where he was standing with a friend. Watson did not flee. The officers asked only if Watson had identification and he said yes. *Id*. at *2. One of the officers then pulled up Watson's untucked shirt and "seized a heretofore invisible pistol from [defendant's] waistband." *Id*. But, unlike here, there was no permissible seizure of Watson—neither reasonable suspicion for a detention nor probable cause for an arrest.

After the hearing, Steen also questioned whether the officers established his flight. They did. It is referenced in their police reports. All three officers testified about it. It is corroborated by their body camera footage. Indeed, most of Alyacoub's

12

body cam shows him running. True, Steen is not visible. But Alyacoub testified that he was too far ahead. On the video, when Alyacoub rounded the corner of the alley, Steen is there being detained by the other officers. And McBee's body cam reveals a winded Steen. That Steen ran from the liquor store is not in doubt.

Lastly, Steen appears to take issue with proactive policing in general. But that is a separate discussion from whether Steen's Fourth Amendment rights were violated. And here they were not because the officers had probable cause to arrest Steen for carrying a concealed weapon.

*Brandishing a firearm in public.* After the suppression hearing, the government argued that the officers also had probable cause to arrest Steen when he held the firearm in his hand and pointed it in the direction of McBee and Scott. The Supreme Court has explained that an arresting officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." *United States v. Harness*, 453 F.3d 752, 755 (6th Cir. 2006) (quoting *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (citations omitted); *see also United States v. Anderson*, 923 F.2d 450, 457 (6th Cir. 1991) ("[K]nowledge of the precise crime committed is not necessary to a finding of probable cause provided that probable cause exists showing that a crime was committed by the defendants."). In other words, the Court's inquiry is whether the officers had probable cause to believe Steen was committing an offense, and not only carrying a concealed weapon as referenced in the police reports.

13

It is a misdemeanor in Michigan to willfully and knowingly brandish a firearm in public. Mich. Comp. Laws § 750.234e. And a police officer without a warrant may arrest a person if they commit a misdemeanor in the officer's presence. Mich. Comp. Laws § 764.15(1)(a). McBee and Scott testified that during their pursuit of Steen, he pointed a firearm in their direction. This is corroborated by their body camera footage. After Steen was seized, numerous officers arrived on the scene. McBee tells one of them, "When he turned the corner bro, he had it in his hand and like went like this and I jumped out. I didn't draw down on him, but I pulled my gun on him and he saw it and threw the one and fell." (Hrg. Ex. A, McBee 9:55–10:07.) Scott likewise explains, "As soon as we stopped to talk to [Steen] he took off on foot. [Alyacoub] chased him. We drove across the street. He ran out here, had [the gun] in his hand and was running toward us." (Hrg. Ex. B, Scott 1:22–1:32.) This would have also supported an arrest.

\* \* \*

Thus, having probable cause to arrest Steen, the officers seized the gun in the fanny pack incident to this arrest. *See United States v. Seymour*, 739 F.3d 923, 929 (6th Cir. 2014). "It is well-settled that a search incident to a lawful arrest is a traditional exception to the warrant requirement of the Fourth Amendment." *United States v. Robinson*, 414 U.S. 218, 224 (1973). This exception provides that officers may search "the arrestee's person and the area within his immediate control." *Chimel v. California*, 395 U.S. 752, 763 (1969) (internal quotation marks omitted). The fanny pack was on Steen's body when he was arrested. *See Northrop v. Trippett*, 265 F.3d 372,

14

379 (6th Cir. 2001) (officers lawfully searched, incident to defendant's arrest, duffel bag that he removed from his shoulder and placed at his feet). There is no basis to suppress the firearms or ammunition.[2]

### III.

Steen's motion to suppress evidence based upon lack of probable cause is DENIED.

SO ORDERED.

Dated: October 27, 2021

> s/Laurie J. Michelson
> LAURIE J. MICHELSON
> UNITED STATES DISTRICT JUDGE

---

[2] Nor is there any need, at this time, to suppress the statement made by Steen after his arrest about throwing the gun. It was not used in resolving this motion.